657 So.2d 945 (1995)
Priscilla AUSTIN and Terry Lee Austin, Appellants,
v.
The DUVAL COUNTY SCHOOL BOARD, a Body Politic, Appellee.
No. 94-1859.
District Court of Appeal of Florida, First District.
July 13, 1995.
*947 Marshall D. Davis, Jacksonville, for appellants.
John A. Delaney, General Counsel, and John R. Jolly, Asst. Gen. Counsel, Jacksonville, for appellee.
JOANOS, Judge.
Priscilla and Terry Lee Austin, appellants/plaintiffs, seek reversal of a final summary judgment entered in favor of Duval County School Board (School Board). Appellants maintain the trial court erred in holding that the School Board and the City of Jacksonville (City) entered into a joint venture, and that Priscilla Austin was a special employee of the School Board. We agree, and reverse.
This case had its inception in a motor vehicle accident which occurred on July 26, 1989, when Ms. Austin was a passenger in a van owned by the School Board and driven by a School Board employee. The van left the road and rolled over, crushing Ms. Austin's right hand. On March 20, 1992, the Austins filed a complaint against the School Board and the driver, seeking damages in tort for the injuries incurred by Ms. Austin in the July 1989 accident.[1] The School Board answered the complaint, denying it was negligent, and asserting as primary defense that Ms. Austin was an employee of a governmental entity at the time of the accident, and that the claim was barred due to the School Board's entitlement to immunity under the workers' compensation law.
Subsequently, the School Board filed a motion for summary judgment, on grounds that Ms. Austin was an employee of a governmental entity at the time of the accident, and had received workers' compensation benefits as a result. The School Board further asserted that the relationship between Ms. Austin and the School Board was such that the School Board was entitled to immunity from tort liability under the workers' compensation laws. The Austins responded with a motion for partial summary judgment, asserting that Ms. Austin was an employee of the City at the time of the accident, and there was no joint venture between the City and the School Board.
Certain background information is necessary to an understanding of the trial court's ruling. On May 3, 1989, the State Department of Education accepted an agreement submitted by the City to sponsor the 1989 Summer Lunch Program for children from low income families. The program was funded by federal grants to the state, which then contracted with local sponsors throughout the state to administer the program at the local level. The City, as sponsor, had final financial and administrative responsibility for the program.
The City entered into a contract with the School Board to prepare, package, and deliver lunches to sites chosen by the City. The School Board contracted to provide lunches at a price of $1.69 per lunch. Under the agreement, if the School Board made a profit, the profit was not shared with the City; if the School Board lost money on the program, the loss was not made up by the City. The City hired temporary personnel to assist in the 1989 Summer Lunch Program, including production workers, who assisted School Board personnel at the lunch production centers established by the School Board at three school cafeterias. Ms. Austin was hired by the City as a production worker, and was assigned to work at the school cafeteria at Highlands Junior High School.
The City's primary purpose in hiring production workers was to provide job skills and training to low income, unskilled workers. The fact that the production workers assisted School Board personnel in packaging and delivering the lunches was an incidental benefit to the City. The City set the production workers' hours, determined their rate of pay and their benefits, paid them, and had the right to fire them. The City was not reimbursed by the School Board for the production workers' salaries.
*948 The City had an informal agreement with the School Board to provide production workers at the production sites. There were three City production workers at each production site. These City production workers were supervised by an on-site School Board manager. Ms. Austin was hired as a production worker by Sharel Grissett, a City employee. Ms. Grissett then instructed Ms. Austin to report to the production center and to assist in preparation, delivery, and loading of meals. Ms. Grissett also instructed Ms. Austin to call her if she had any problems at the production center. Ms. Grissett went to the production centers several times to resolve employee problems. After Ms. Austin's injury in the accident involving the School Board's van and employee, the City paid all of her workers' compensation benefits. Moreover, City employee Sharel Grissett signed Ms. Austin's report of injury as her "foreman/supervisor." Ms. Austin was supervised on a daily basis by School Board employee Joan Jones.[2]
On the basis of the foregoing facts, the trial court entered a final summary judgment for the School Board, finding the School Board was immune from tort liability because it entered into a joint venture with the City. The trial court further found the School Board was immune from suit because Ms. Austin was a special employee of the School Board.
The first question for resolution is whether the City and the School Board were engaged in a joint venture, such that the School Board would be immune from tort liability. An injured employee of a joint venture covered by a worker's compensation insurance policy secured by one joint venturer cannot maintain an independent tort action to recover for such injuries against the other joint venturer. Burke v. Charles B. Esher, Inc., 397 So.2d 439 (Fla. 3d DCA 1981); Wilson v. Sirkin Building Corp., 336 So.2d 462, 463 (Fla. 3d DCA 1976).
In addition to the general elements of a contract, for a joint venture, there must be: (1) a community of interest in the performance of a common purpose, (2) joint control or right of control, (3) a joint proprietary interest in the subject matter, (4) a right to share in the profits, and (5) a duty to share in any losses which may be sustained. Kislak v. Kreedian, 95 So.2d 510, 515 (Fla. 1957). The standard has been construed strictly, so that the absence of even one of the five elements has precluded a finding of joint venture. See, e.g., Kislak, 95 So.2d at 517; Edward J. Gerrits, Inc. v. McKinney, 410 So.2d 542, 545 (Fla. 1st DCA), review denied, 419 So.2d 1196 (Fla. 1982); Brown v. Snellgrove, 503 So.2d 447, 448 (Fla. 2d DCA), review denied, 511 So.2d 998 (Fla. 1987); Pollard v. Browder, 126 So.2d 310, 312 (Fla. 2d DCA 1961).
Application of the first joint venture element to the instant case reveals that the City and the School Board shared a general community of interest in providing summer lunches for low income children. In addition to this common altruism, the City was motivated to administer the program to provide work experience and training to unskilled 17- and 18-year-olds, while the School Board was motivated by profit and summer employment opportunities for its cafeteria workers. As to the second element, the record reflects there was no joint control. The City decided eligibility, number of lunches to be prepared, menus, number and location of work sites, and retained the right to approve any subcontract proposed by the School Board. As to the third element, there was no joint proprietary interest in the subject matter. While the City contracted with the School Board to act as provider for the Summer Lunch Program for twenty years, it was free to enter into an agreement with private enterprise.[3] As to the fourth and fifth elements, the agreement between the City and *949 the School Board did not provide for sharing of profits or losses. Rather, the reverse is true. The School Board made a profit in connection with the 1989 Summer Lunch Program which was not shared with the City. Moreover, City employee Sharel Grissett testified that the School Board would have to bear any losses it incurred.
Section 440.11(1), Florida Statutes, provides an exception to the workers' compensation exclusive remedy provision when employees "are assigned primarily to unrelated works within private or public employment." The unrelated works exception was applied in Holmes County School Board v. Duffell, 651 So.2d 1176 (Fla. 1995). In Duffell, the supreme court affirmed this court's holding that workers' compensation is not a claimant's exclusive remedy as to liability of a fellow employee, when each employee is operating in the furtherance of the employer's business, but is assigned to unrelated works. The exception also was applied in State, Department of Corrections v. Koch, 582 So.2d 5, 8 (Fla. 1st DCA), review denied, 592 So.2d 679 (Fla. 1991), to affirm the trial court's grant of partial summary judgment holding the Department of Corrections liable for the negligence of its employee who fatally struck a Department of Transportation employee in an automobile accident.
The alleged joint venture in this case arose in the context of the School Board's claim of immunity from tort liability for Ms. Austin's injuries, based on the City's provision of workers' compensation benefits to Ms. Austin. The parties agree as to the elements essential for a determination of joint venture, and both the School Board in its brief, and the trial court in the appealed order, implicitly concede that the facts of this case do not meet the test for a determination that the City and the School Board were engaged in a joint venture. Further, the School Board has failed to provide a rationale which would justify application of a less stringent standard when the alleged joint venturers are governmental entities, and our independent research has failed to disclose authority for such position. Therefore, we conclude the trial court erred in finding that a joint venture existed between the two governmental agencies.
The second issue is whether Ms. Austin was a special employee of the School Board. The special employer issue arises in cases of borrowed employees when the borrowing employer claims immunity from tort liability for injury, and in emergency situations, where a finding of an employment relationship is necessary to do justice. See Smith v. Greg's Crane Service, Inc., 576 So.2d 814, 816-819 (Fla. 4th DCA 1991). When there is a contract of hire, the employer is obligated by the workers' compensation statute to obtain compensation benefits. An employment relationship creates both the duty to obtain compensation benefits and the concomitant immunity from claims based on negligence. See Employers Insurance of Wausau v. Abernathy, 442 So.2d 953, 954 (Fla. 1983); Smith, 576 So.2d at 817; Fred G. Wright, Inc. v. Edwards, 642 So.2d 808 (Fla. 2d DCA 1994).
The three-part test for an employment relationship is: (1) whether there is a contract of hire, express or implied, between an employee and the special employer; (2) whether the work being done at the time of the injury is essentially that of the special employer; and (3) whether the special employer has the right to control the details of the work. Stuyvesant Corp. v. Waterhouse, 74 So.2d 554, 557 (Fla. 1954). The contract for hire is the most important part of the test, because the employee loses the right to sue the special employer at common law for negligence when he enters the new employment relationship. Shelby Mutual Insurance Co. v. Aetna Insurance Co., 246 So.2d 98, 101 n. 5 (Fla. 1971); Crawford v. Florida Steel Corp., 478 So.2d 855, 859 (Fla. 1st DCA 1985). The continuance of the general employment is presumed, and can be overcome only by a clear demonstration that a new temporary employer has been substituted for the old. Shelby, 246 So.2d at 100, 101; Crawford, 478 So.2d at 859. In the absence of a contract for hire, an injured worker is free to pursue a negligence claim against another employer, even if there is some indicia of an employer-employee relationship. Smith, 576 So.2d at 819. See also Employers *950 Insurance of Wausau v. Abernathy, 442 So.2d at 954.
The uncontested facts in this case do not demonstrate that Ms. Austin became a special employee of the School Board. Although Ms. Austin was supervised by a School Board employee at the production site, she was not told that she was employed by the School Board. Since Ms. Austin received her pay checks from the City, she reasonably could believe that she was a City employee. Her acceptance of supervision by a School Board supervisor is not sufficient to support a conclusion that she knowingly entered into a contract for hire by the School Board. While it appears the work being done was essentially that of both the School Board and the City, only the School Board earned a profit for the services being provided. It is undisputed that Ms. Austin was paid by the City, was directed to report any work problems to her City supervisor, was required to conform to the City dress code, could be fired only by the City, and was provided with worker's compensation coverage by the City. The School Board's supervision of Ms. Austin's day-to-day activities is not sufficient to support a conclusion that she became an employee of the School Board.
In view of the different inferences that can be drawn from the undisputed facts of this case, see Locke v. Bank of Washington County, 501 So.2d 1349, 1350 (Fla. 1st DCA), review denied, 511 So.2d 297 (Fla. 1987); Smith v. Greg's Crane Service, Inc., 576 So.2d 814, 815 (Fla. 4th DCA 1991), we conclude the trial court erred in finding Ms. Austin was a special employee of the School Board.
Accordingly, we reverse the grant of final summary judgment in favor of Duval County School Board, and remand this cause for further proceedings.
BOOTH and LAWRENCE, JJ., concur.
NOTES
[1] The driver of the van ultimately was dismissed as a party to the cause.
[2] According to Ms. Jones's affidavit, there were no differences between the job descriptions and duties of School Board workers and City workers. Ms. Jones attested that she had the same supervisory relationship with Ms. Austin as she did with production workers employed by the School Board.
[3] Indeed, during the 1989 program, the City considered seeking another provider in future because the School Board did not have vehicles equipped to keep milk cold.