701 So.2d 437 (1997)
Kenneth R. DREYFUSS, Appellant,
v.
Jacques F. DREYFUSS and Brickell Earth Station, Inc., Appellees.
No. 96-1381.
District Court of Appeal of Florida, Third District.
November 19, 1997.
Silver & Garvett, and Fredric M. Garvett, Coconut Grove, for appellant.
Kozyak Tropin & Throckmorton, and Paul C. Huck, Miami, for appellees.
Before JORGENSON, GERSTEN and GREEN, JJ.
PER CURIAM.
Appellant, Kenneth R. Dreyfuss ("Kenneth"), appeals the final judgment entered in favor of the appellees, Jacques F. Dreyfuss ("Jacques") and Brickell Earth Station, Inc. ("BESI"), in a breach of contract action. We affirm finding there is competent, substantial evidence in support of the trial court's conclusion that no contract was formed.
*438 The facts of this case sadly involve a dispute between a father and son. Appellant Kenneth initiated this action in 1992, claiming entitlement to one-half of the gross revenues of his father's business. The case eventually went to trial on a third amended complaint which alleged breach of an oral partnership agreement that was formed during a conversation between Kenneth and his father, Jacques.[1]
At trial, the facts revealed that Kenneth incorporated BESI for Jacques in 1981. BESI's sole shareholder, officer, and director is Jacques, who formed the company to obtain cable television contracts with condominium associations. Kenneth, who was employed in a private law firm, performed BESI's legal work, and drafted some of the company's first service contracts. Although Kenneth was terminated by the law firm in July of 1982, he continued to provide legal services to BESI.
In September of 1982, the Cricket Club Condominium approved a service contract that was negotiated by Jacques. Jacques invited Kenneth to attend a sales presentation at the Cricket Club, to give Kenneth some experience and to lift his spirits from his recent termination by the law firm. After the presentation, Jacques and Kenneth had a "car conversation" which Kenneth claims created an oral partnership agreement.
According to Kenneth, during this "car conversation" Jacques offered to pay Kenneth a percentage of BESI's potential future revenues. In return, Kenneth would give up his right to hourly compensation for his legal services, forgive any existing debt for services rendered, and join Jacques as a salesman. Although Kenneth could not remember if any terms regarding profits and losses were discussed during the conversation, he claims he relied on the alleged agreement between 1982 and 1986 in working to obtain six cable contracts for BESI.
According to Jacques, there was never an agreement to form a partnership to share equally in BESI's profits. The conversation was merely an attempt to help his son who had just lost a job by suggesting that Kenneth join the family business. Jacques asserted that instead of profits, Kenneth was paid a share of gross revenues for the time he spent obtaining cable contracts, and for his legal services. Additionally, Jacques testified that he first learned about his son's claim for a partner's share of the gross revenues only after he read the third amended complaint, filed eleven years after the "car conversation." Based on this evidence, the trial court found that there was no meeting of the minds to support a binding partnership contract.
It is a fundamental principle of appellate review that findings made by a lower court are presumed correct and will not be disturbed on appeal unless these findings are totally unsupported by competent, substantial evidence. Marrone v. Miami Nat'l. Bank, 507 So.2d 652 (Fla. 3d DCA 1987); Randy Int'l, Ltd. v. American Excess Corp., 501 So.2d 667 (Fla. 3d DCA 1987). Here, there is competent, substantial evidence to support the trial court's finding that there was no meeting of the minds on the essential elements necessary to form a contractual partnership. See Theocles v. Lytras, 518 So.2d 936 (Fla. 3d DCA 1987). The record clearly reflects that Kenneth failed to sustain his burden of proving the existence of a binding contract. See Metropolitan Dade County v. Estate of Hernandez, 591 So.2d 1124 (Fla. 3d DCA 1992); Theocles, 518 So.2d at 937.
Specifically, Kenneth failed to identify such essential terms as the parties to the contract, or the contract's duration.[2] Indefiniteness regarding the duration of an agreement can *439 be fatal to its enforceability as a binding contract. Smith v. Smith, 375 So.2d 1138 (Fla. 3d DCA 1979). In order to be binding, a contract must also be definite and certain as to the parties' obligations to one another. Shay v. First Federal of Miami, Inc., 429 So.2d 64 (Fla. 3d DCA 1983). However, Kenneth failed to define the parties' corresponding rights and duties.[3] Kenneth could not even recall the financial specifics of the alleged partnership: whether the partnership profits would be gross or net; split equally; stated as revenue, profit or income.[4]
A partnership is only established when both parties contribute to the capital or labor of the business, have a mutuality of interest in both profits and losses, and agree to share in the assets and liabilities of the business. Matter of Ward, 6 B.R. 93, 6 Bankr.Ct.Dec. 1231 (Bankr.M.D.Fla.1980); Florida Tomato Packers, Inc. v. Wilson, 296 So.2d 536 (Fla. 3d DCA 1974), cert denied, 327 So.2d 32 (Fla.1976); Shaffer v. Ross, 143 So.2d 568 (Fla. 3d DCA 1962). To establish a partnership, there must be a "community of interest in performance of a common purpose, joint control or right of control, joint propriety of interest in subject matter, right to share in the profits, and duty to share in any losses which may be sustained." Austin v. Duval County School Bd., 657 So.2d 945 (Fla. 1st DCA 1995). These requirements are strictly construed and the absence of even one is fatal to the finding of a partnership. Here the record does not show a joint proprietary interest because Kenneth and his father never agreed to work exclusively together in obtaining cable contracts. In fact, in mid-1983, Kenneth represented one of BESI's competitors, Telesat, without the knowledge of Jacques.[5] Interestingly, Kenneth did not share with Jacques or BESI the resulting commission profits.[6] Further, Kenneth did not share in any of the losses of his alleged partnership. Additionally, Kenneth failed to report the income he received from BESI as partnership income and never received a partnership K-1 for his income tax returns.[7] More importantly, there was never any discussion concerning the distribution of partnership gains, losses, payment of business *440 loans, payment of overhead costs, how to dissolve the partnership or the distribution of assets.[8]
It is not the province of this court to substitute its judgment for that of the trial court through reevaluation of testimony and evidence. Helman v. Seaboard Coast Line R.R. Co., 349 So.2d 1187 (Fla.1977). Rather an appellate court's function is to test whether the trial court's conclusions are supported by competent evidence. Shaw v. Shaw, 334 So.2d 13 (Fla.1976).
There is clearly competent, substantial evidence in the record to support the trial court's conclusion that there was no meeting of the minds on the elements essential to a contractual partnership. Thus, it is the duty of this court to affirm the order below. See William Dorsky Associates, Inc. v. Highlands County Title and Guar. Land Co., 528 So.2d 411 (Fla. 2d DCA 1988) (appellate court has duty to affirm trial court findings supported by competent, substantial evidence); Brandenburg Inv. Corp. v. Farrell Realty, Inc., 463 So.2d 558 (Fla. 2d DCA 1985)(same). Accordingly, we affirm the final judgment entered in favor of the appellees in all respects.
Affirmed.
JORGENSON and GERSTEN, JJ., concur.
GREEN, Judge (concurring in part; dissenting in part).
I agree with the majority's conclusion that there is competent substantial evidence in the record to support the trial court's finding that there was no "meeting of the minds which could result in any binding contract of joint venture or partnership between the plaintiff and defendant." That conclusion, however, is not completely dispositive of this action where the appellant/plaintiff alternatively pled a simple breach of oral contract action, apart from his alleged joint venture or partnership action. In this count, the appellant sought compensation separately for work performed in connection with six specified cable contracts pursuant to an oral agreement with the appellee. It is clear from the final judgment that the lower court simply either neglected to rule on this count or impermissibly merged this separate count with the alternatively pled action for breach of joint venture or partnership agreement. In either event, I do not believe that the final judgment can be affirmed in toto and that this case must be remanded for a finding from the trial court on the appellant's breach of oral agreement count, particularly, where as here, there is some evidence to support this claim. Whether this evidence is sufficient to sustain this claim, however, must be *441 determined by the trial court in the first instance.
NOTES
[1] The original complaint alleged that Kenneth entered into a written contract with Jacques and/or BESI to participate in a joint venture. The third amended complaint alleged an oral contract with both Jacques and BESI, an oral joint venture or partnership with Jacques, and a quantum meruit claim against both Jacques and BESI.
[2] Although Kenneth purports that he entered into a contract with both Jacques and BESI, even he concedes that Jacques never discussed being individually responsible, or with whom Kenneth had an agreement. (T. 486, 194). Kenneth also acknowledges that his claim is solely to income created by six service contracts assigned by BESI to Telesat. However, BESI, not Jacques, is the party to these service contracts, and is the only entity entitled to receive income and obligated to perform duties under them. Accordingly, any assertions Kenneth makes concerning entitlement to income generated by the service contracts could only pertain to BESI, not Jacques. Nevertheless, Kenneth maintained he had a partnership with Jacques. In response to an inquiry of whether he had an agreement with either BESI and/or Jacques, Kenneth could only reply, "I had a discussion with my father that resulted in an agreement that inured to BESI's benefit." (T. 496-7).

There was no discussion concerning the duration of the alleged oral agreements. Kenneth asserts that his agreement was for at least as long as the term of the six underlying service contracts. However, three of these did not even exist until two to three years after the car conversation.
[3] Q: ... did you say to your father words to the effect that, dad, we're now entering into this new arrangement, in my view it is a joint venture or like a joint venture, and you ought to know there are certain ramifications, legal ramifications which give rise to rights and duties between us as "joint venturers"? Did you say anything at all like that? [Kenneth]: No ...
 T. 426

[4] The record further reflects that Kenneth could not even say if the key words partnership or joint adventure were ever mentioned before his third amended complaint.

Q: You don't recall using the word "joint venture" with regard to this transaction until after you filed this lawsuit, isn't that true? [Kenneth]: ... I don't have a specific recollection, no.
 T. 418.

[5] Q: Well, don't you understand that a joint venturer can only engage in a separate business on his own behalf during the period that he is a member of the joint venture when the other activity does not compete, in competition with, or connected with the same type of business that the joint venture is involved in without the consent of the co-partner?
 T. 440

[Kenneth] There was no specific agreement that we were each going to work exclusively together on obtaining cable contracts.
 T. 439-40.

[6] Q: Did you or did you not understand that you would share equally in the profits of this joint venture? Yes or no? [Kenneth]: No ...
 T. 434.

[7] Q: With regard to the income that was paid to you with regard to the joint venture, did you report that to the IRS as a joint venture or partnership income or profits?

[Kenneth]: Apparently I didn't ... I relied on my accountant ... to prepare my tax returns, and I signed them.
Q: Well, I guess he can only prepare tax returns in accordance with what you tell him, correct?
A: Yes.
Q: Did you ever tell him that you had a partnership or a joint venture agreement and that this income that you were reporting to the government was a result of a joint venture or a partnership?
A: He was aware of what we were doing. I don't recollect what I told him exactly, but he was my father's accountant and my accountant.
Q: But the fact of the matter is you never told your accountant that you had income as a result of a joint venture or a partnership, did you?
A: I don't know that I ever did ...
 T. 456-7.

[8] Q: And you understood that one of those principles was that you would have to contribute towards the losses sustained by the joint venture, right?

[Kenneth]: Well, we didn't agree on that ...
 T. 429.
Q: So you agree that you would have to contribute to any losses that were sustained by this joint venture?
[Kenneth]: No, no, not any losses.
 T. 430.
Q: ... You don't recall having any discussions about who was going to bear the burden of expenses that would be incurred in the new venture that you were entering into with BESI and/or your father?
[Kenneth]: There were no expenses anticipated and it wasn't discussed ...
Q: So you didn't discuss with your father who was going to bear those expenses; isn't that true?
A: We didn't have a discussion about who was going to bear those expenses.
 T. 406-7.
[The Court]: Was there any discussion about sharing losses?
[Kenneth]: Sharing losses?
Q: Yes.
A: No.
 T. 419.