[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 01-16006

_____

D. C. Docket No. 97-01221-CV-ORL-22

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
December 20, 2002
THOMAS K. KAHN
CLERK

DONNA LEE H. WILLIAMS,
Insurance Commissioner of the
State of Delaware, as Receiver of
National Heritage Life Insurance
Company in liquidation,

                                        Plaintiff-Appellant,

versus

SOLOMON OBSTFELD,
EUGENE GRIN, et al.,

                                        Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(December 20, 2002)**

Before BIRCH and BLACK, Circuit Judges, and PROPST*, District Judge.

BLACK, Circuit Judge:

_____

    * Honorable Robert B. Propst, United States District Judge for the Northern District of Alabama, sitting by designation.

This case arises under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-1968, and related state laws.[1] Appellant Donna Lee H. Williams (the Commissioner) is the Commissioner of Insurance for the State of Delaware, and brought this suit in her capacity as receiver for National Heritage Life Insurance Company (NHL), a company in liquidation. She alleges Solomon Obstfeld, Eugene Grin, Samuel Rothman, and Global Equities & Realty, Inc. (Global Equities II) (collectively the Global Defendants) participated in a scheme to fraudulently acquire control of and loot NHL. The district court granted summary judgment in favor of the Global Defendants on all counts. We affirm.

## I. BACKGROUND

### A. *Procedural Background*

The Commissioner filed suit on October 7, 1997, against a host of persons and entities to recover losses arising from NHL's collapse. The claims against most of the Global Defendants' co-defendants resulted in settlement, default judgment, or summary judgment in favor of the Commissioner. On April 15, 1998, the Commissioner filed an Amended Complaint naming ten additional defendants, including the Global Defendants. The Amended Complaint alleged the

---

[1] The Commissioner asserted state law claims for fraud, aiding and abetting fraud, aiding and abetting breach of fiduciary duty, conversion, aiding and abetting conversion, and fraudulent conveyance.

2

Global Defendants conducted and participated in a racketeering enterprise in violation of 18 U.S.C. § 1962(c), and that they conspired to conduct and participate in a racketeering enterprise in violation of 18 U.S.C. § 1962(d). The Amended Complaint also included state law claims against the Global Defendants for fraud, aiding and abetting fraud, aiding and abetting breach of fiduciary duty, conversion, aiding and abetting conversion, and fraudulent conveyance.

On November 28, 2000, the Commissioner filed a motion for partial summary judgment against the Global Defendants, asserting they were vicariously liable for the established criminal behavior of co-defendant Sholam Weiss.[2] The Global Defendants opposed the motion, and on March 28, 2001, filed their own motion for summary judgment as to all claims against them. On July 27, 2001, the district court denied the Commissioner's motion for summary judgment, rejecting her theory of vicarious liability. The court then granted summary judgment in favor of the Global Defendants on all claims, stating the Commissioner had presented no evidence to establish they knowingly committed at least two predicate acts, as required to establish a pattern of racketeering. This appeal followed.[3]

---

[2] Weiss was convicted of racketeering and other charges in connection with this scheme, and was sentenced to a total of 845 years in prison.

[3] The Commissioner appeals both the denial of her motion for summary judgment and the grant of summary judgment in favor of the Global Defendants.

*B.*     *Factual Background*

NHL is a Delaware company with its principal place of business in Orlando, Florida.  By May 1990, the Delaware Insurance Department, which was responsible for regulating NHL, had become concerned about the company's financial condition.  The Department advised NHL it would take regulatory action, including possibly preventing the company from continuing its business operations, if the company did not raise additional capital.  In its attempts to obtain additional capital, NHL became the victim of a series of fraudulent schemes through which the defendants sought to acquire control of the NHL, prolong its life beyond the time it became insolvent, and loot the company.  The Commissioner alleges the Global Defendants knowingly participated in two of these schemes:  the mortgages scheme and the mortgage-backed bond scheme.

1.     The Mortgages Scheme

In May or June 1993, co-defendant Patrick Smythe, then the president and chief operations officer of NHL's parent company, informed NHL's chief financial officer he was negotiating the acquisition of up to $200 million in reinsurance for the company's annuity portfolio, and that NHL needed to accumulate substantial liquid assets to fund the transaction.  After NHL's CFO agreed to the accumulation of tens of millions of dollars to fund the reinsurance transaction, Smythe and co-

4

defendant Lyle Pfeffer, a member of the board of directors of NHL's parent company, informed NHL that various funds had been forwarded to an escrow account maintained by co-defendant Jan Schneiderman. Co-defendant Sholam Weiss set up a shell corporation, South Star Management Company, Inc. (South Star), purportedly as a vehicle to execute the reinsurance. In reality, neither the company nor the escrow funds were used to fund a reinsurance transaction; instead, they were used at least in part to purchase non-performing mortgages. The Global Defendants were involved in purchasing these non-performing mortgages.

The Global Defendants had been buying and selling mortgages and properties since the early 1990s, and in 1992 they formed a small company, Global Equities & Realty Group, Inc. (Global Equities).[4] In 1993, Weiss approached the Global Defendants, asking them to purchase non-performing mortgages on behalf

---

[4] Global Equities and Realty, Inc. (Global Equities II) was formed by Messrs. Obstfeld, Grin, and Rothman on or about September 15, 1995. Global Equities was dissolved for failure to pay taxes on June 26, 1996. The Global Defendants assert Global Equities II was entitled to summary judgment based on the fact that it did not come into existence until after the relevant events in this case. The Commissioner contends Global Equities II is a successor corporation to Global Equities, and thereby responsible for the latter's liabilities. Because we affirm the district court's grant of summary judgment in favor of Global Equities II on other grounds, we decline to address whether Global Equities II is a successor corporation to Global Equities.

of South Star and attempt to convert them into performing mortgages.[5] Weiss then planned to sell the performing mortgages to NHL for a profit. The Global Defendants were to receive commissions for acquiring the non-performing mortgages, and higher commissions on any non-performing mortgages they succeeded in converting into performing mortgages.

Co-defendant Smythe, NHL's president and chief operations officer, testified in related criminal proceedings he understood it is illegal for an insurance company to advance funds to third parties to purchase mortgages and subsequently sell the mortgages to the insurance company, because insurance regulations generally do not permit insurance companies to allow other entities to hold their money. Nevertheless, Weiss and South Star transferred money from the NHL escrow account to the Global Defendants for the purchase of various non-performing mortgages. The Global Defendants were unsuccessful in converting most of the non-performing mortgages into profitable investments. As a result of the failed mortgages scheme and other frauds against the company, NHL suffered a substantial loss. If South Star had sold the non-performing mortgages to NHL, the

_____

[5] The parties differ in their characterization of this arrangement. The Commissioner asserts Weiss and the Global Defendants formed a joint venture or ad hoc partnership, whereas the Global Defendants maintain Weiss hired them to purchase and convert the non-performing mortgages.

insurance company would have been forced to reflect a reduction in the value of its assets, and this reduction would have been so significant it would have rendered the company insolvent. To avoid selling the non-performing mortgages to NHL, and NHL's resulting insolvency, Weiss and other co-defendants arranged the Mortgage-Backed Bond Scheme.

2.     The Mortgage-Backed Bond Scheme

In November and December 1993, Weiss and other co-defendants agreed not to sell the mortgages purchased with NHL's funds, which they had failed to make performing, to NHL. Rather, they agreed to sell the mortgages to National Housing Exchange (NHE), a shell corporation controlled by Weiss. NHE would pool the mortgages into bonds and sell the bonds to NHL. Bond documents falsely stated NHE had acquired the mortgages backing the bonds from unaffiliated third parties and that the mortgages were performing mortgages. Smythe proposed NHL use the $118 million purportedly being held for reinsurance to purchase instead the NHE bonds. On December 28, 1993, the NHE bonds were delivered to NHL, and numerous mortgages the Global Defendants had purchased in South Star's name were transferred to NHE. Weiss and others caused NHL's records to show the company had purchased and owned the mortgage-backed bonds at a stated value of

7

$118,293,665.75. Because the bonds were grossly overvalued, NHL became insolvent and eventually entered liquidation.

## II. DISCUSSION

The Commissioner raises two issues on appeal. First, she asserts the district court should have, as a matter of law, granted her motion for summary judgment because the Global Defendants were vicariously liable for the actions of their alleged partner Sholam Weiss. Second, she contends summary judgment in favor of the Global Defendants was in error because the evidence she presented created a genuine issue of material fact regarding whether they acted with knowledge or fraudulent intent.[6] We review *de novo* the district court's decisions on summary judgment. *Arriaga v. Fla. Pac. Farms, L.L.C.*, 305 F.3d 1228, 1234-35 (11th Cir. 2002).

---

[6] The Commissioner also asserts the district court abused its discretion by denying her motion to reconsider the grant of summary judgment for the Global Defendants in light of declarations from Michael Blutrich, Lyle Pfeffer, and Jan Schneiderman, submitted along with the motion. She alleged the declarations constituted new evidence unobtainable prior to the district court's order on summary judgment. We disagree. The Commissioner had questioned Blutrich and Pfeffer prior to the summary judgment motion, and therefore the information in their declarations was not unobtainable. The Commissioner correctly asserts Schneiderman was not available for questioning before the district court ruled on the motion for summary judgment; however, her declaration contains only cumulative evidence. The district court, therefore, did not abuse its discretion by denying the Commissioner's motion for reconsideration based on these declarations.

## A. *Vicarious Liability*

In order to establish a claim of RICO liability under 18 U.S.C. § 1962(c), a plaintiff must prove the defendant knowingly committed at least two predicate acts. As will be discussed in section II.B., the Commissioner has presented no evidence the Global Defendants knowingly participated in any criminal activity, or that they knew others were defrauding NHL. Nonetheless, the Commissioner asserts she is entitled to summary judgment because the Global Defendants are vicariously liable for the established criminal conduct of Sholam Weiss. She argues Weiss and the Global Defendants were either partners or joint venturers in the operation of South Star, through which they purchased non-performing mortgages with funds diverted from NHL. Their status as partners or joint venturers, the Commissioner claims, makes the Global Defendants legally responsible for Weiss' criminal conduct.

Under Florida law, a joint venture is a form of partnership, and both types of entities are generally governed by the same rules of law. *Kislak v. Kreedian*, 95 So. 2d 510, 514 (Fla. 1957); *see also Pinnacle Port Cmty. Ass'n., Inc. v. Orenstein*, 872 F.2d 1536, 1539 n.3 (11th Cir. 1989) ("[I]n general, the law governing partnerships is applicable to joint ventures."). A partnership is created only where "both parties contribute to the labor or capital of the enterprise, have a mutuality of interest in both profits and losses, and agree to share in the assets and liabilities of

9

the business." *Dreyfuss v. Dreyfuss*, 701 So. 2d 437, 439 (Fla. Dist. Ct. App. 1997). A joint venture, like a partnership, may be created by express or implied contract, and the contractual relationship must consist of the following elements: (1) a common purpose; (2) a joint proprietary interest in the subject matter; (3) the right to share profits and duty to share losses, and (4) joint control or right of control. *Pinnacle Port*, 872 F.2d at 1539; *Kislak*, 95 So. 2d at 515. Florida courts have interpreted these requirements to preclude a finding that a partnership or joint venture exists where any factor is missing. *See Kislak*, 95 So. 2d at 517; *Dreyfuss*, 701 So. 2d at 439; *Austin v. Duval County Sch. Bd.*, 657 So. 2d 945, 948 (Fla. Dist. Ct. App. 1995).

The Commissioner has failed to prove the relationship between the Global Defendants and Weiss contains all the characteristics of a partnership or joint venture.[7] First, she has not demonstrated the Global Defendants and Weiss agreed to share any losses arising from their arrangement. The Global Defendants were to receive commissions reflecting a fixed percentage of the value of non-performing

---

[7] Whether the Global Defendants shared with Weiss a common purpose in operating South Star and a joint proprietary interest in its subject matter are close questions. However, we need not discuss these factors. As discussed below, two partnership elements are clearly absent from the agreement between Weiss and the Global Defendants, and "the absence of even one is fatal to the finding of a partnership." *Dreyfuss*, 701 So. 2d at 439.

10

mortgages they purchased on behalf of South Star, and a higher percentage of the value of mortgages they succeeded in making performing. The Commissioner argues a duty to share in losses was implicit in the relationship between Weiss and the Global Defendants, despite the absence of an express loss-sharing agreement. In certain situations, where one party supplies labor and skill, the other supplies capital, and both agree to share in the profits of the venture, Florida courts have concluded an agreement to share losses exists as a matter of law "since in the event of a loss, the party supplying the knowhow would have exercised his skill in vain and the party supplying the capital investment would have suffered a diminishment thereof." *Fla. Tomato Packers, Inc. v. Wilson*, 296 So. 2d 536, 539 (Fla. Dist. Ct. App. 1974); *see also Russell v. Thielen*, 82 So. 2d 143, 146 (Fla. 1955). The Global Defendants, though, would receive commissions regardless of whether they successfully turned around the non-performing mortgages, and these commissions were based on a fixed percentage of the value of the mortgages, not on profits. The Commissioner, therefore, has not shown the Global Defendants and Weiss had an implicit duty to share in South Star's losses.

The Commissioner likewise has failed to demonstrate the Global Defendants and Weiss shared joint control or a joint right of control over the business. In fact, Grin testified he and the other Global Defendants thought they were reporting to

Weiss, and assumed he was their boss. Weiss' actions are consistent with the Global Defendants' assumptions. For example, Weiss delegated to David Schick the authority to approve the terms the Global Defendants recommended for converting non-performing mortgages into performing mortgages, and the Global Defendants repeatedly testified about Schick's refusal to approve their recommended terms. Weiss and South Star also overrode the Global Defendants' recommendation of a company to administer the purchased mortgages and appointed another company to service the mortgages. This evidence indicates Weiss did not share control of South Star with the Global Defendants. Because the Commissioner's evidence does not establish the existence of a partnership or joint venture between Weiss and the Global Defendants, her vicarious liability theory fails.[8]

B.     *The Global Defendants' Knowledge or Intent*

In the absence of vicarious liability, to establish the Global Defendants' liability under § 1962(c), the Commissioner must prove they knowingly committed at least two predicate acts. The Commissioner's state law claims, except her claim for conversion, likewise require tortious intent. The district court granted the

---

[8] Because no partnership or joint venture existed in this case, we need not consider whether and under what circumstances a partnership may be held liable under RICO for the illegal acts of one of its partners.

12

Global Defendants' motion for summary judgment, stating the Commissioner presented no evidence they conspired with Weiss or anyone else to defraud NHL, or even knew others were defrauding the company. The Commissioner contends summary judgment in favor of the Global Defendants was in error because the evidence she presented created a genuine issue of material fact regarding whether they acted with knowledge or fraudulent intent. In reviewing the district court's grant of the Global Defendants' motion for summary judgment, we view all the evidence, as we must, in the light most favorable to the Commissioner. *See Coppage v. U.S. Postal Serv.*, 281 F.3d 1200, 1203 (11th Cir. 2002) (in considering a motion for summary judgment, the court must view all evidence in the light most favorable to the nonmoving party). Even in this light, the evidence is insufficient to create a genuine issue of material fact regarding the Global Defendants' knowledge or intent.

In general, the existence of knowledge or intent is a question of fact for the factfinder, to be determined after trial. *Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1476 (11th Cir. 1991). Nonetheless, summary judgment is proper, despite the question of knowledge or intent, "if the party opposing summary judgment fails to indicate that he can produce the requisite quantum of evidence to enable him to reach the jury with his claim." *Smith v. First Nat'l Bank*

13

*of Atlanta*, 837 F.2d 1575, 1580 (11th Cir. 1988) (internal quotation omitted); *see also Piamba Cortes v. Am. Airlines, Inc.,* 177 F.3d 1272, 1292 n.14 (11th Cir. 1999) (quoting *In re Air Crash Near Cali*, 985 F. Supp. 1106, 1124 (S.D. Fla. 1997)) ("[T]here are many instances in the law where the evidence of state of mind is so unequivocal that summary judgment is proper and, indeed, expressly mandated by Rule 56."). This case presents one of the rare instances in which, despite the question of knowledge or intent, summary judgment is appropriate.

The Commissioner demonstrated the Global Defendants knew they were purchasing mortgages on behalf of an insurance company, with money South Star obtained from the insurance company. Later, she showed, they learned the insurance company was NHL. However, the Commissioner presented no evidence the Global Defendants knew the mortgage funds had been *stolen* from NHL. To the contrary, it appears Weiss purposely kept the Global Defendants in the dark regarding the nature of the acquisition of funds from NHL. When he approached the Global Defendants about purchasing mortgages for South Star, for example, Weiss claimed he had a contract with an insurance company to purchase mortgages on its behalf. Later, at a meeting attended by NHL president Patrick Smythe, Weiss, Global Defendant Obstfeld, and others, Obstfeld was specifically asked to leave the room before any discussion occurred regarding the criminal nature of the

14

mortgages scheme. We agree with the district court: The Commissioner has presented no evidence the Global Defendants engaged in or knew others were engaging in criminal activity with respect to NHL.

The Commissioner next asserts even if the Global Defendants had no actual knowledge of the fraudulent schemes against NHL, they should be liable to the company because they were willfully blind toward the criminal conduct. Under the doctrine of willful blindness or deliberate ignorance, which is used more often in the criminal context than in civil cases, knowledge can be imputed to a party who knows of a high probability of illegal conduct and purposely contrives to avoid learning of it. *United States v. Perez-Tosta*, 36 F.3d 1552, 1564 (11th Cir. 1994) ("A 'deliberate ignorance' instruction is appropriate when 'the facts . . . support the inference that the defendant was aware of a high probability of the existence of the fact in question and purposely contrived to avoid learning all of the facts in order to have a defense in the event of a subsequent prosecution.'" (quoting *United States v. Rivera,* 944 F.2d 1563, 1571 (11th Cir.1991))); *see also United States v. Sharpe*, 193 F.3d 852, 871 (5th Cir. 1999) (evidence was sufficient to support deliberate ignorance instruction where the defendant knew of the high probability of illegal conduct and purposely contrived to avoid learning about it).

15

The Commissioner points to several facts as evidence of the Global Defendants' alleged willful blindness. First, the Global Defendants knew the funds for the mortgages they purchased on behalf of South Star came from an insurance company, and later they discovered the company was NHL. Second, they knew specialized regulatory requirements restricted insurance companies' mortgage purchases. Finally, she asserts the Global Defendants' business was unsuccessful prior to their relationship with Weiss, and therefore they had a strong incentive to ignore any warnings of impropriety in order to preserve the new and profitable arrangement. This evidence is insufficient to demonstrate knowledge of a high probability of illegal conduct. Although the Global Defendants knew the mortgage funds came from an insurance company, the Commissioner points to no circumstances that should have caused them to question whether the funds were obtained legally. In fact, as noted above, Weiss specifically told them he had a contract with NHL for the mortgage purchases. The Global Defendants' previously bleak financial situation would provide an incentive to refrain from investigating suspicious facts, but a mere incentive is not sufficient to create liability. The Commissioner has not demonstrated the Global Defendants knew of a high probability of illegal conduct, and therefore she has failed to demonstrate the Global Defendants were willfully blind toward Weiss' illegal activities.

16

Because the Commissioner cannot create a genuine issue of material fact regarding the Global Defendants' knowledge or intent, the district court properly granted the their motion for summary judgment on the Commissioner's RICO claims.

With the exception of her claim for conversion, all of the Commissioner's state law claims require proof of tortious intent. These state law claims fail for the same reason her RICO claims fall: She has failed to present evidence creating a genuine issue of material fact that the Global Defendants purposely engaged in any illegal activity with regard to NHL, knew of such activity by others, or were willfully blind to the fact that others were engaging in illegal activity.[9] Having already concluded the Commissioner's evidence did not create a genuine issue of

---

[9] The district court granted the Global Defendants' motion for summary judgment on the conversion claim because it concluded the Commissioner presented no evidence they unlawfully exercised dominion over or interfered with specifically identifiable funds owned by NHL. The Commissioner does not address this reasoning; rather, she asserts this Court should reverse the grant of summary judgment on *all* state law claims because she presented evidence of the Global Defendants' unlawful knowledge or intent. As the Commissioner has not challenged the basis for the district court's grant of summary judgment on her conversion claims, we will not address them. *See Hartsfield v. Lemacks*, 50 F.3d 950, 953 (11th Cir. 1995) (quoting *Allstate Ins. Co. v. Swann,* 27 F.3d 1539, 1542 (11th Cir. 1994)) ("'[i]ssues that clearly are not designated in the initial brief ordinarily are considered abandoned'"); *Greenbriar, Ltd. v. City of Alabaster,* 881 F.2d 1570, 1573 n.6 (11th Cir.1989) (failure to elaborate argument in brief resulted in abandonment of issue).

material fact regarding the Global Defendants' knowledge of criminal activity, we affirm the district court's grant of summary judgment on the state law claims.

## III.  CONCLUSION

The Global Defendants are not vicariously liable for the criminal acts of Sholam Weiss, and the district court did not err by denying the Commissioner's motion for summary judgment.  The court correctly granted the Global Defendants' motion for summary judgment on the Commissioner's RICO claims and her state law claims, because the Commissioner failed to demonstrate they knowingly committed fraud against NHL, knew others were defrauding NHL, or were willfully blind to the crimes against NHL.

AFFIRMED.