See also 302 B.R. 394, 2003 WL 22885399.

### In re FLOORING AMERICA, INC., Debtor.

Morton P. Levine, as Chapter 11 Trustee for the Estate of Flooring America, Inc., f/k/a the Maxim Group, Inc., Plaintiff,

v.

David E. Cicchinelli, Defendant.

Bankruptcy No. 00–68370.
Adversary No. 00–6793.

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

Feb. 19, 2003.

**390**

Louis G. McBryan, Macey, Wilensky, Cohen, Wittner & Kessler, Atlanta, GA, for Plaintiff.

Andrew B. David, Sugar, Friedberg & Felsenthal, Chicago, IL, for Defendant.

Morton P. Levine, Levine & Block, Atlanta, GA, Chapter 11 Trustee.

### ORDER

JOYCE BIHARY, Bankruptcy Judge.

This adversary proceeding is before the Court on cross-motions for summary judgment. Plaintiff Morton P. Levine in his capacity as the Chapter 11 Trustee seeks to recover $100,000.00 plus interest and attorney's fees from defendant David E. Cicchinelli ("Cicchinelli") on a demand note dated September 1, 1998. Defendant argues that there was no consideration for the note and that the $100,000.00 he received from the debtor was a bonus, not a loan. Defendant filed a counterclaim for unpaid bonuses and the value of some stock in the debtor which defendant alleges is owed pursuant to an alleged employment agreement between the debtor and defendant. The parties agree that this is a core proceeding as defined by 28 U.S.C. § 157.[1] The parties each request a summary judgment on the note claim, and plaintiff seeks a summary judgment in his favor on defendant's counterclaim. After carefully considering the parties' motions, briefs and the supporting material submitted, the Court concludes that plaintiff's summary judgment motion should be granted and defendant's motion for summary judgment should be denied.

A court will enter summary judgment only upon a showing that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Courts must review all evidence in the light most favorable to the non-moving party. *Samples on Behalf of Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir.1988). "Genuine disputes are those by which the evidence is such that a reasonable jury could return a verdict for the non-movant, [and][i]n order for factual issues to be 'genuine' they must have a real basis in the record." *Szomjassy v. OHM Corp.*, 132 F.Supp.2d 1041, 1046 (N.D.Ga. 2001). If the nonmoving party's evidence is merely colorable or is not significantly probative summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indust. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Rather, the non-movant must present specific, significant, probative evidence supporting its case sufficient to require the trier of fact to resolve the different versions of the truth at trial. *Ellenberg v. Bouldin (In re Bouldin)*, 196 B.R. 202, 207 (Bankr.N.D.Ga.1996). Summary judgment is proper "if the party opposing summary judgment fails to indicate that he can produce the requisite quantum of evidence to enable him to reach the jury with his claim." *Williams v. Obstfeld*, 314 F.3d 1270, 1277 (11th Cir.2002) (quoting *Smith v. First Nat'l Bank of Atlanta*, 837 F.2d 1575, 1580 (11th Cir.1988)). "Where the judge is also the ultimate trier of fact, and where a trial would not enhance the court's

---

1. Plaintiff's complaint alleges that this matter is core proceeding and that the Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157 and 1334. (Plain.'s Compl., at para. 2). Defendant admits that this is a core proceeding in its answer. (Def.'s Answer, at para. 2).

ability to draw inferences and conclusions from the undisputed facts, then the court is free to draw such inferences and conclusions within the context of a motion for summary judgment." *Lanting v. Lanting (In re Lanting)*, 198 B.R. 817, 821 (Bankr. N.D.Ala.1996) (quoting *In re Communications Management & Info. Inc.*, 172 B.R. 136, 141 (Bankr.N.D.Ga.1994)).

The material facts are undisputed. Debtor Flooring America, Inc. was formerly known as The Maxim Group, Inc. The Maxim Group, Inc. operated one of the largest networks of specialty floor covering stores in North America. Debtor filed for relief under Chapter 11 of the Bankruptcy Code on June 15, 2000, and plaintiff Morton P. Levine was appointed as a Chapter 11 Trustee in the case on February 25, 2001.

■ Defendant Cicchinelli was employed by the debtor from May of 1998 until April of 1999. On or about August 24, 1998, debtor issued two checks to Mr. Cicchinelli totaling $250,000.00. One check was check number 026489 in the amount of $100,000.00 payable to defendant David Cicchinelli; check 024689 was not accompanied by a check request form indicating the check's purpose. The second check, check number 026490, was in the amount of $150,000.00, but this check was accompanied by a check request form indicating that the reason for the check was for a bonus payment. (Dep. of David Cicchinelli, Exhibits 7, 11 and 12).

It is undisputed that Mr. Cicchinelli signed a demand note ("the Note") for $100,000.00. The Note was dated September 1, 1998, one week after he received the check for $100,000.00. The Note provided for interest at eight and one-half percent (8.5%) per annum and included a provision increasing the interest rate upon Mr. Cicchinelli's default. The Note also contained a standard provision for attorney's fees.

The Note's language begins with the phrase "*[f]or value received*, the undersigned, DAVID E. CICCHINELLI, ... promises to pay to the order of THE MAXIM GROUP, INC., ... the principal sum of ONE HUNDRED THOUSAND AND NO/100TH DOLLARS ($100,000.00) ...." The Note also contains the following language: "This Note is to evidence loans now being made by Payee to Maker and/or additional loans to Maker which may be made from time to time by Payee in the future. All such loans shall be evidenced by this Note and shall be subject to its terms." Plaintiff made a proper demand for payment of principal and interest and informed defendant of his intent to seek attorney's fees under the Note's terms. The Note remains unpaid to this date.

In Mr. Cicchinelli's affidavit, he admits receiving the $100,000.00, he admits signing the Note one week later, and he admits that he has made no payments under the Note. Nonetheless, he argues that he cannot be liable under the Note, because he contends that the $100,000.00 given to him was not intended as a loan, but was intended as a bonus. This argument is not supported by the evidence in the record.

In support of his motion for summary judgment, plaintiff presents evidence of several instances where debtor memorialized having made a $100,000.00 loan to Mr. Cicchinelli in September of 1998. On page 9 of its Proxy Statement dated November 18, 1998, debtor states that:

> In September 1998, the [debtor] loaned $100,000.00 to David E. Cicchinelli, the [debtor]'s Chief Operating Officer and a director. This loan bears interest at an annual rate of 8.5%, payable monthly, with principal due on demand. The loan was made to Mr. Cicchinelli to fund certain of his personal expenses.

Again, on page 9 of its Proxy Statement dated November 12, 1999, debtor states that:

> In September 1998, the [debtor] loaned $100,000 to David E. Cicchinelli, who at the time was serving as the [debtor]'s Chief Operating Officer and a director. This loan bears interest at an annual rate of 8.5%, payable monthly, with principal due on demand. The loan was made to Mr. Cicchinelli to fund certain of his personal expenses. As of October 1, 1999, $109,000, including accrued interest, remained outstanding on this loan.

In its Annual Report for the fiscal year ending February 5, 2000, debtor reaffirms that it had loaned $100,000.00 to Mr. Cicchinelli, stating that:

> In September 1998, we loaned $100,000 to David E. Cicchinelli, who at the time was serving as our Chief Operating Officer and a director. This loan bears interest at an annual rate of 8.5%, payable monthly, with principal due on demand. The loan was made to Mr. Cicchinelli to fund certain of his personal expenses. The highest amount owed to us by Mr. Cicchinelli during fiscal 2000 was $112,000. As of February 5, 2000, $112,000, including accrued interest, remained outstanding on this loan.

There are two additional documents which Mr. Cicchinelli signed in which he confirms the loan of $100,000.00. At the time he signed the Note, he also signed an amendment to certain stock option agreements in which he admitted signing the Note for $100,000.00. In this document, he agreed that the stock option would terminate upon any default under the Note and that furthermore, he could not exercise any option as long as any amounts remained outstanding under the Note. Significantly, on March 20, 1999, Mr. Cicchinelli signed a confirmation as part of an audit performed by Arthur Andersen, agreeing that the debtor held a demand note from Mr. Cicchinelli dated September 1, 1998, that the unpaid principal on the Note was $100,000.00, that the interest rate on the Note was 8.5%, and that no interest had been paid to date. In regard to this confirmation letter to the auditors, defendant argues, somewhat remarkably, that this letter does not indicate any money is owed. To the contrary, the letter is captioned "Note Receivable—$100,000" and it clearly shows that defendant confirmed a demand note with *unpaid* principal of $100,000.00 and *no interest* paid to date.

Mr. Cicchinelli points to nothing in the record to support his argument that the $100,000.00 check in August of 1998 was intended as a bonus. As previously discussed, the debtor had issued two checks to Mr. Cicchinelli in August of 1998, one for $100,000.00 and the other for $150,000.00. Only the $150,000.00 check was accompanied by a request form indicating that the reason for the check was a bonus. None of the debtor's records support defendant's claim that this $100,000.00 check was issued as a bonus. Furthermore, defendant has failed to offer any evidence that he paid income taxes on the $100,000.00 alleged bonus.

Defendant's other grounds for opposing plaintiff's summary judgment motion also find no support in the record. Defendant argues that the language in the Note meant that the $100,000.00 had to be advanced after September 1, 1998. This is contradicted by the language in the Note as it begins with the words "For value received." Both the terms of the Note along with debtor's records, the public statements issued by the debtor to the Securities & Exchange Commission ("SEC"), and Mr. Cicchinelli's signed confirmation to the auditors all indicate clear-

ly that the Note was in fact funded by the $100,000.00 check issued just days before the date on the Note.

Finally, Mr. Cicchinelli argues that he really only signed the Note "for the auditors," and that Mr. A.J. Nassar, the CEO of the debtor, told him sometime in late 1999 that he would not have to repay the $100,000.00 referenced in the Note. While these arguments may have significance in other proceedings pending against this defendant and others, these arguments do not provide Mr. Cicchinelli with any defense in this action brought by the Chapter 11 Trustee.

In summary, a reasonable fact finder evaluating this evidence could not draw more than one inference from these facts. The only inference to be drawn is that the debtor loaned Mr. Cicchinelli $100,000.00 for personal expenses, that Mr. Cicchinelli signed a Note, that the debtor reflected this Note in its proxy statements and annual reports, that Mr. Cicchinelli confirmed this obligation to the debtor's auditors, and that Mr. Cicchinelli owes the debtor principal, interest and attorney's fees under this Note.

■ There is also no genuine dispute of fact pertaining to defendant's counterclaim. Defendant alleges that in January of 1998, A.J. Nassar, as president and CEO of the debtor, offered employment to the defendant as president of the debtor and that the offer included the issuance to Mr. Cicchinelli of 250,000 shares of the company's stock. Defendant alleges that he accepted the offer, assumed the position of president in May of 1998, and resigned in May of 1999. He prays for a judgment equal to the bonuses and stock he alleges he should have received. The Trustee seeks a summary judgment on this counterclaim, arguing that it is undisputed that Mr. Cicchinelli never attained the position of president of The Maxim Group, Inc.,

that the Board of Directors never elected Mr. Cicchinelli as president, and that the Board never authorized the issuance of 250,000 shares of stock to the defendant.

The only evidence offered by the defendant in support of his counterclaim is a letter dated January 30, 1998, from Mr. Nassar to Mr. Cicchinelli. The letter provides as follows:

Dear Dave:

This letter will serve as an understanding of the proposed agreement between The Maxim Group, Inc. and you. Your title will be President of The Maxim Group, Inc. and your compensation will be as follows: $250,000.00 per year, base pay and a bonus of 100% for reaching corporate budget, determined by the executive committee. In addition, 250,000 shares of stock will be issued. And on a per quarter basis for achieving quarterly budget numbers an additional 50,000 shares of stock will be issued (per quarter) for the first two years. In addition to your base pay, the company will furnish you with an apartment and a car for one year, while you are employed by the company and full hospitalization consistent with senior management's present policies. Additional bonuses will be established for any improvement over budget for $50,000, per 1/2 point of EBIT achieved over and above said budget.

*If you are in agreement* with the above terms and conditions *I will draw up a formal proposal and proceed as soon as possible.* I look forward to hearing from you soon.

Very truly yours,

A.J. Nassar

President and CEO

(Emphasis added)

However, some two weeks later, on February 17, 1998, Mr. Nassar again wrote

Mr. Cicchinelli, stating that he had received Mr. Cicchinelli's letter declining the employment offer and that he was very disappointed. There is no evidence of an agreement and no evidence of a formal proposal as referenced in the January 30, 1998 letter.

The Bylaws of the debtor provided that officers of the company, including specifically the president of the company, must be elected by the Board of Directors. The Minutes of the debtor do not indicate that Mr. Cicchinelli was ever elected president of the debtor. In addition, the debtor's SEC filings for 1998 and 1999 do not refer to Mr. Cicchinelli as president of the debtor, but instead refer to Mr. Nassar as president and chief executive officer and Mr. Cicchinelli as chief operating officer. Finally, plaintiff has presented an employment announcement dated May 11, 1998, stating that Mr. Cicchinelli will be President of the Retail Group. The Trustee argues that the Retail Group was only a division of the debtor. The defendant has not refuted that argument.

Once again, a genuine issue is one by which the evidence is such that a reasonable fact finder could return a judgment for the non-movant. In order for the factual issue to be genuine, it has to have a real basis in the record. While Mr. Cicchinelli's brief employment status with the debtor is less than clear, the Trustee has met the *Celotex* initial burden of establishing the nonexistence of a triable fact as to whether he was he debtor's president. See *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the Trustee meets that burden, the burden of production shifts to the counterclaimant (the defendant) and he must come forward with sufficient evidence to prove each and every element of the counterclaim. *Rollins v. TechSouth, Inc.,* 833 F.2d 1525, 1528 (11th Cir.1987). This the defendant has not done. Here, the record as a whole could not lead a rational trier of fact to find that the defendant was president of the debtor, that his employment as president of the debtor was ever formalized, and that he was ever entitled to receive 250,000 shares of stock pursuant to any employment agreement. Accordingly, there is no purpose to be served by going to trial on the defendant's counterclaim, and plaintiff is entitled to a summary judgment.

In accordance with the above reasoning, plaintiff's motion for summary judgment is hereby granted, defendant's motion for summary judgment is hereby denied, and a judgment in favor of the plaintiff will be issued.