EDMONDSON, Circuit Judge,
dissenting in part and concurring in the result in part:
This-appeal presents a question of statutory construction: what is the significance of the words “or in bad faith” in the Hyde Amendment? I dissent and write separately because I believe that the phrase “or in bad faith” covers, and was intended to cover, prosecutorial positions beyond those positions that are baseless or exceed constitutional constraints: the limit that today’s Court imposes. I would affirm the District Court’s decision to award, per the Hyde Amendment, fees and expenses.
The Hyde Amendment provides that a court presiding over a criminal case “may award to a prevailing party, other than the United States, a reasonable attorney’s fee and other litigation expenses, where the court finds that the position of the United States was vexatious, frivolous, or in bad faith, unless the court finds that special circumstances make such an award unjust.”[1] Pub.L. No. 105-119, § 617, 111 Stat. 2440, 2519 (1997) (reprinted in 18 U.S.C. § 3006A, historical and statutory *1320 notes) (emphasis added). And we have said that a position taken in bad faith reflects “not simply bad judgment or negligence, but rather it ... contemplates a state of mind affirmatively operating with furtive design or ill will.” United States v. Gilbert, 198 F.3d 1293, 1299 (11th Cir.1999) (internal quotation mark omitted) (quoting Black’s Law Dictionary 139 (6th ed. 1990)).
I understand this “state of mind” element to mean that the “in bad faith” standard is essentially a question of fact[2] about the federal prosecutor’s subjective intent as he drove a prosecution forward. From the statute’s text itself, I also understand the word “or” in the phrase “or in bad faith” to mean that “in bad faith” is a complete alternative basis to support an award of attorney’s fees and other litigation expenses. So, it is unimportant that a prosecution was not “vexatious”[3] and was not “frivolous”[4]: put differently, it is not decisive under the statute that a criminal prosecution was conducted in an objectively reasonable way (not vexatious) and that the prosecution had an objectively realistic likelihood of success (not frivolous). Congress, by adding the phrase “or in bad faith,” was looking beyond litigation positions that were either vexatious or frivolous and addressing something different. We must not take the word “or” out of the statute by reading “in bad faith” as meaning the same thing as either “vexatious” or “frivolous.”
That the Executive Branch’s legal position (when viewed objectively) is debatably correct throughout the course of a prosecution is not always sufficient to avoid imposition of Hyde sanctions, if (1) the defendant is completely acquitted, and (2) the judge who tried the case finds that the Government’s position, in fact, was motivated by prosecutorial bad faith. Ill will, the touchstone of bad faith, is not a sophisticated or technical concept. I believe that Congress accepted that some prosecutions, in fact, are driven along by things like personal ambition, personal vindictiveness, or politics; and I believe Congress intended those prosecutorial positions to be included within the “or in bad faith” standard of the Hyde Amendment — even when the prosecution is pressed in an objectively reasonable way (not vexatious) and has an objectively reasonable likelihood of success (not frivolous).[5]
*1321 As Congressman Hyde said in the debates about what — with modifications— was to become the Hyde Amendment: “People do get pushed around, and they can get pushed around by their government.” 143 Cong. Rec. H7786-04, H7791 (Sept. 24, 1997) (statement of Rep. Hyde). I submit that it is, in part, for these pushing-around cases — the misuse of the browbeating dominance that can come from holding a prosecutorial office — for which the phrase “or in bad faith” was enacted into law in what is called the Hyde Amendment.
The District Judge who presided over the trial in this case and who then ordered the award of Hyde sanctions is an experienced judge with — as far as I know — no history of hostility to the Department of Justice or to prosecutors.
In applying the Hyde Amendment, the District Court entered a published order crowded with thorough findings of fact. See United States v. Shaygan, 661 F.Supp.2d 1289 (S.D.Fla.2009). After a hearing at which he had an opportunity to interrogate the lead prosecutor and the principal criminal investigator as well as other witnesses,[6] the District Judge determined, in fact, that bad faith was widely present in the Government’s prosecution of Defendant:
I conclude that the position taken by Cronin [the lead prosecutor] in filing the superseding indictment; initiating and pursuing the collateral investigation based on unfounded allegations; suppressing information about the roles of two key government witnesses as cooperating witnesses in the collateral investigation; and attempting to secure evidence from the collateral investigation that would have jeopardized the trial and severely prejudiced the Defendant, constitute bad faith. These were conscious and deliberate wrongs that arose from the prosecutors’ moral obliquity and egregious departures from the ethical standards to which prosecutors are held. Id. at 1321.
*1322 The District Court’s decision to award Defendant attorney’s fees and costs dating-back to the time of the Superseding Indictment stemmed from the Court’s factual determination that the Superseding Indictment was the “first manifestation” of the “seismic shift” with which the lead prosecutor (Cronin) had threatened defense counsel. Id. at 1298. According to the District Court, the decision to add 118 counts was “significantly motivated by ill-will.”[7] Id. And the Court specifically rejected the lead prosecutor’s blander explanation for his “seismic shift” comment; the District Court found that it was “not possible to square the threat with a good faith prosecution of this case.” Id. at 1294.
For me then, this case ultimately turns on whether the record in this case contains sufficient evidence of bad faith — that is, prosecutorial ill-will — to make the District Judge’s fact-finding of “bad faith” not clearly erroneous. I conclude that the record does contain sufficient evidence and that the District Judge’s central finding— that the Government’s position in this case was “in bad faith” by the time of the filing of the Superseding Indictment — is not clearly erroneous.
I conclude that the evidentiary record is sufficient as a whole to support the Hyde Amendment fact-findings of the District Judge, but I make two specific observations. First, the District Judge heard the testimony of the lead prosecutor and rejected the prosecutor’s explanation. I am aware that we uphold criminal convictions regularly based upon the sufficiency of evidence that proceeds from a criminal defendant’s testifying to his innocence. We say — I believe entirely correctly — that a fact-finder is entitled to believe the exact opposite of what a witness testifies to and, then, to treat this disbelieved testimony as substantive evidence of guilt. United States v. Brown, 53 F.3d 312, 314 (11th Cir.1995). I think the same thought process applies here: the prosecutor and the criminal investigator offered explanations for their questionable conduct; the District Judge rejected their explanations and determined that the opposite — a prosecution hammered into shape “in bad faith”— was the truth.[8]
*1323 Second, the Department of Justice does not contend that this prosecution proceeded entirely properly. In fact, the Department of Justice conceded and offered to pay — in the United States Attorney’s words, “pursuant to the Hyde Amendment” — some attorney’s fees and litigation expenses: those stemming from the secret tape-recording of the defense team.[9]
But the Department does not want to pay fees and expenses dating back to the Superseding Indictment. Given that the Government does not dispute that the prosecutor in this case did things that ought not to have been done and that would justify Hyde Amendment fees and expenses at some point, it seems to me that the only serious inquiry in this case is when the liability for fees and expenses should start: a fact question of where to draw the line. Pursuant to Rule 404(b), we routinely allow evidence of other crimes and wrongs to show the bad motive and bad intent that accompanied a criminal defendant’s conduct as he did something else. Fed.R.Evid. 404(b). Especially applying the rationale of 404(b), it seems to me that the District Court had ample support to think that the filing of the Superseding Indictment was motivated by the same bad faith as the later acts of discovery violations and improper investigation of the defense team.[10] So, the District Court’s starting the fees at the time of the Superseding Indictment seems to have a more-than-adequate factual basis.
The Government says that the Superseding Indictment was not significantly tainted by personal vindictiveness or another kind of bad faith. The Government *1324 says — as did the lead prosecutor — that the Superseding Indictment was the result of further investigation that led the prosecutors to find other persons who could testify to Defendant’s criminal conduct. Rejecting the prosecutor’s explanation, the District Judge, among other things, found: “The patients that were included in the Superseding Indictment were known to the Government long before the motion to suppress was litigated, yet no Superseding Indictment was sought at an earlier time.” Shaygan, 661 F.Supp.2d at 1298.
The Government argues that this statement is clearly erroneous. The Government says that it is not true that all of the specifically named people — specific patients of Defendant — added in the Superseding Indictment were known to the Government earlier.
I do not read the District Court’s sentence the same way as the Government does, and I am confident that the sentence need not be read the way the Government reads it. I think the District Judge was saying (1) that the Government’s prosecutor was well aware, before the motion to suppress was even filed, that Defendant had other patients (a class of other potential witnesses that were out in the world);[11] and (2) that the Government’s prosecutor took no action to find any of these other potential witnesses until the prosecutor became distressed and angry with defense counsel because of the motion. The Government concedes it was on account of the motion to suppress and its allegations— that certain DEA agents had lied — that the prosecutor threatened defense counsel with a “seismic shift” in how the Government was going to proceed in the prosecution.
So, it may be true that the prosecutor, long before the Superseding Indictment, did not know specifically the identity of witness X, Y, or Z. I do not think that the District Judge was necessarily saying that the prosecutor did know those details. But the prosecutor did know that there were very likely people like X, Y, or Z who were in existence and who likely could be found; and until the prosecutor became angry and hostile towards defense counsel, these witnesses were not actively looked for. I think the District Judge was making the latter observation about what the prosecutor knew when the District Judge says, “[t]he patients that were included in the Superseding Indictment were known to the Government long before.... ” Id. Therefore, what the District Judge said— even in this one isolated sentence contained in a long and detailed order — is not truly clearly erroneous.
At times, I get the sense that the concern with applying the Hyde Amendment to this case is a worry that the resulting precedent will, in some way, open the floodgates to the Executive Branch’s being hit with attorney’s fees whenever the Executive Branch loses a criminal prosecution. I think this flood is improbable. I submit the first thing to realize is that the Executive Branch hardly ever loses a criminal prosecution.[12] Therefore, the idea of a flood is, to my way of thinking, pretty theoretical.
*1325 Moreover, the Hyde Amendment is not a “loser pays” law. The burden is on the prevailing defendant to prove that a prosecution was “vexatious, frivolous, or in bad faith.” Placing the burden on the acquitted defendant made recovery of expenses and fees in criminal cases inherently more difficult than under the EAJA, where the burden is on the Government. Furthermore, the fact of an acquittal, in and of itself, is no evidence that the Government’s position was vexatious or frivolous or in bad faith. In addition and apart from everything else, the statute itself allows a District Judge to withhold expenses and attorney fees whenever circumstances would make such an award “unjust.”[13] No good reason exists to believe that United States District Judges are going to make awards under the Hyde Amendment lightly.[14] I also think the facts of prosecutorial misconduct in this case — as found by the District Judge — are exceptionally troubling: I do not believe we will often see cases involving fact-findings for this sort of extensively manifested prosecutorial ill will toward the defendant and defense lawyers.[15]
I disagree with the idea that, if the Department of Justice and its lawyers are under the supervision, in some way, of federal judges — when the Department of Justice and its lawyers are actively engaged in litigating a case before a United States Court — a violation of the separation of powers is looming. I am inclined to think just the opposite. For me, it is the instances of the treating of the Department of Justice and its prosecutors differently from — and better than — other litigants that threaten the separation of powers between the Judicial Branch and the Executive Branch. But to decide the present case, I think that we need not dispute about the concept of separation of powers at a high level of abstraction.[16]
In this case, the District Judge did not attempt to exercise some inherent power *1326 of the judiciary to assess attorney’s fees and expenses against the Executive Branch (although the District Judge did invoke this inherent power to reprimand publicly individual prosecutors). In assessing fees and expenses, the District Judge acted pursuant to a statute that was enacted by Congress and signed into law by the President. This fact in itself might not answer any and all possible questions about separations of powers for every case, but I think it goes so far that we need not worry much about it to decide this case.
To end as I began, I believe this case is about statutory construction. Based on the text of the statute, I believe that the phrase “or in bad faith” was intended to reach prosecutions conducted in a manner that was motivated by — and that demonstrated — personal vindictiveness, personal ambition, politics, and so on.
A high-minded prosecutor, with a clean heart, can still commence a “frivolous” prosecution or conduct a prosecution in a “vexatious” way, if the prosecutor’s acts are objectively unreasonable: in this way, the Hyde Amendment can be triggered. More important for this case, even IF a prosecutor’s acts are objectively reasonable, the Government’s position can be “in bad faith” if the prosecutor acts with ill will: in this way as well, the Hyde Amendment can be triggered.
I believe the record in this case allowed the District Judge to find, as a matter of fact, that the prosecutor’s personal vindictiveness prominently marked the Government’s position as the prosecution against Defendant went forward. Therefore, I would affirm the Hyde Amendment award.
I agree that the individual sanctions against Mr. Cronin and Ms. Hoffman were entered without proper notice and process. I also agree that insufficient reason exists to remove the District Judge from this case on remand.

. The Hyde Amendment words that set out the standard for the award of fees and expenses differ significantly from the words for the standard set out in the Equal Access to Justice Act ("EAJA”), which allows for awarding fees from the Government to prevailing parties in civil actions. 28 U.S.C. § 2412(d)(1)(A). And although the Hyde Amendment does incorporate some procedures from the EAJA, the Hyde Amendment— for the award standard — does not reference or incorporate the EAJA standard for an award. I believe that, given that the EAJA was referenced for some purposes but not for the award standard, the Hyde Amendment standard for an award was intended to be understood independently from the EAJA standard and to be understood on the Hyde Amendment's own terms. Because the loss of a person's freedom is involved, the Executive Branch’s powers as prosecutor are greater, more uniquely governmental, and more to be feared by the People than the Executive Branch's power as a civil litigant; thus, it makes sense to me that Congress chose one standard for civil cases and another standard for criminal cases — and that the standard for criminal cases would stress deterring venomous prosecutorial conduct.

. We have stated in various contexts that intent is ordinarily a question of fact. See, e.g., Rutherford v. Crosby, 385 F.3d 1300, 1307 (11th Cir.2004) (in double-jeopardy case, "[t]he prosecutor's intent is a question of fact”) (citation omitted); Chanel, Inc. v. Italian Activewear of Fla., Inc., 931 F.2d 1472, 1476 (11th Cir.1991) (stating, in trademark-infringement case, that "[a]s a general rule, a party's state of mind (such as knowledge or intent) is a question of fact for the factfinder, to be determined after trial”) (citations omitted); Aronowitz v. Health-Chem Corp., 513 F.3d 1229, 1237 (11th Cir.2008) (contract case); Williams v. Obstfeld, 314 F.3d 1270, 1277 (11th Cir.2002) (RICO case).

. A "vexatious” position is one "without reasonable or probable cause or excuse.” Gilbert, 198 F.3d at 1298-99 (quoting Black's Law Dictionary 1559 (7th ed. 1999)) (internal quotation marks omitted).

. A "frivolous” position is "[g]roundless ... with little prospect of success; often brought to embarrass or annoy the defendant.” Id. at 1299 (alteration in original) (quoting Black’s Law Dictionary 668 (6th ed. 1990)) (internal quotation marks omitted). This definition means, for me, "frivolous” = baseless. And baseless ^ "in bad faith.”

. Congress was not being radically innovative. The idea that litigation can be conducted in a manner that is both proper in form and, at the same time, wrongful- — because of the bad ulterior motive for which the litigation is used — is no innovative idea in the law. For example, the traditional tort of abuse of process is broadly in line with this idea. And in the specific context of that tort, intent is a question for the fact-finder. See 1 Am. Jur. 2d Abuse of Process § 24 (2011) ("The existence of an ulterior motive is a question for the *1321 jury.”); McCollough v. Johnson, Rodenburg & Lauinger, LLC, 637 F.3d 939, 956-57 (9th Cir.2011) (concluding that there was sufficient evidence for the jury to find an ulterior purpose); Warwick Dev. Co., Inc. v. GV Corp., 469 So.2d 1270, 1275 (Ala.1985) (stating that "there was sufficient evidence from which the jury could find that defendants initiated” legal proceedings for an improper purpose).
I note that, in the legislative history of the Hyde Amendment, Congressman Skaggs read from what he said was a statement from the Executive Branch in opposition to what would, with modifications, later become the Hyde Amendment: the Executive Branch stated that "[the legislation] would create a monetary incentive for criminal defense attorneys to generate additional litigation in cases in which prosecutors have in good faith brought sound charges____” 143 Cong. Rec. R 7786-04, H7792 (Sept. 24, 1997) (statement of Rep. Skaggs). I point out that the Executive Branch itself wrote about both "in good faith” and "sound charges”: that is, two different, independent, and important ideas were touched upon by the Executive Branch. I believe the resulting Hyde Amendment itself also touches upon different ideas: the idea of different kinds of unsoundness — frivolous or vexatious — and the separate idea of bad faith. I have little doubt that a crafty lawyer can act with improper motives and, at the same time, appear to stay technically within the outside borders of the law (or, at least, the debatable law). I expect that Congress and the President had little doubt of it either.

. At the evidentiary hearing, the District Judge observed the demeanor and heard the testimony of the witnesses central to this case, gaining insight into the witnesses' credibility, apparent sincerity, consistency, and a number of other traits. See, e.g., Owens v. Wainwright, 698 F.2d 1111, 1113 (11th Cir.1983) ("Appellate courts reviewing a cold record give particular deference to credibility determinations of a fact-finder who had the opportunity to see live testimony.”) (citations omitted). State of mind is a highly subjective matter in which the demeanor of witnesses is of particular significance.

. One problem with the Superseding Indictment itself is that one of the patient/witnesses who was added in the Superseding Indictment flatly denied, at trial, saying the negative things about Defendant that the Government’s chief investigator attributed to this witness before the Superseding Indictment was obtained; and the District Judge credited this witness’s denial. Shaygan, 661 F.Supp.2d at 1296-97.

. This determination was not simply a matter of disbelief. The record reflects many irregularities in the Government’s handling of this case. For example: the magistrate judge, in recommending that the District Court grant Defendant's motion to suppress, found the testifying DEA agents — including the principal criminal investigator — to lack credibility (and the District Court accepted that magistrate judge’s recommendation); the Government has admitted to multiple discovery violations; and the Government not only conducted an improper investigation of defense counsel, but kept this investigation from the District Court until the Government’s hand was forced by the revealing testimony of one Government witness. Plenty of evidence in the record corroborates the District Court’s finding of a prosecutorial position of bad faith and its finding that the prosecutor and criminal investigator lacked credibility.
By the way, no party to this case contends that the first Indictment in this case was filed in bad faith. I understand the Government not to dispute that, as a matter of law, the manner of advancing a prosecution can make the Government’s position in that prosecution a position "in bad faith,” even when the initial Indictment was not "in bad faith.” But whether the Government does or does not accept this legal proposition, I do. Moreover, the Government, by its very nature, can act only through agents who represent it, such as its Assistant United States Attorneys prosecuting criminal cases. The word "position,” as used in the Hyde Amendment, can easily apply to the way in which the Government con *1323 ducts the prosecution, including the ill-will state of mind that a prosecutor’s acts evidence; this definition is not a strained use of the word "position.” The Oxford English Dictionary defines "position” as ”[m]ental attitude; the way in which one looks upon or views a subject or question.” XII Oxford English Dictionary 165 (2d ed. 1989). To me, in this sense the word "position” echoes Congress's use of the phrase "in bad faith” in the statute.

. A concession by the Government is not critical to my analysis of, or my conclusion in, this appeal. The Government, however, did put into writing to the District Court that the Government "acknowledges and deeply regrets that it made serious mistakes in a collateral investigation that was an offshoot of this case and stands ready to pay the additional attorneys’ fees and costs incurred by the defendant as a result.” The same Government brief later says to the District Court that "the United States Attorney has decided, on behalf of the government, to waive any legal defenses pursuant to the Hyde Amendment, and thus not contest payment pursuant to the Hyde Amendment, of the defendant's attorneys' fees and costs associated with litigating the motions to dismiss and for sanctions.” Considering how the adversarial process played out in the District Court, that some fees and expenses could be awarded to Defendant was not contested when the matter of Hyde Amendment payments was submitted for decision to the District Court.

. I know that Hyde Amendment sanctions are not available where the Government's bad faith is limited to isolated incidents. Accord United States v, Schneider, 395 F.3d 78, 90 (2d Cir.2005) (“[Tjhe [Hyde Amendment] does not allow an award for [just] any instance of vexatious, frivolous, or bad-faith conduct.”). The statute speaks of “the position of the United States”; and so we will uphold an award under the Hyde Amendment only when the Government's handling of a prosecution is so substantially vexatious, frivolous, or in bad faith as to characterize the Government’s overarching position in the case. We ignore trifles. We view a case in which Hyde sanctions have been awarded with a wide lens, looking at the Government's position as a whole. The Superseding Indictment, the inappropriately conducted investigation of defense counsel for the purpose of disqualifying them on the eve of trial, and the disobedience of proper discovery rules and so forth are significant and show a course of dealing; and the District Court was justified in finding that the spiteful manner in which the prosecutors conducted this prosecution amounted to the Government's position in this case.

. I submit that it is significant that the Government obtained Defendant’s day planner when Defendant was arrested: more than three months before the motion to suppress was even filed. This day planner contained the names of several of Defendant's patients— and led the Government to still other patients — who were later named in the Superseding Indictment.

. From 2000 to 2009, the percentage of defendants who were ultimately convicted in a given year ranged from 88.57% to 90.70%. Dept. of Justice, Bureau of Justice Statistics, (Defendants in criminal cases closed: Trends, FY 2000-2009, Verdict or outcome of trial: All values, Percents), http://bjs.ojp.usdoj.gov/ fjsrc.

. About sovereign immunity, if too much money starts being paid by the Department of Justice pursuant to court orders under the Hyde Amendment, Congress can amend the statute (for example, cap the fees or rewrite the qualifying standards) or repeal the statute altogether, withdrawing the waiver of sovereign immunity. In the meantime, all I know to do is to read the text of the statute, giving the words what I understand to be their ordinary meaning.

. I do not accept that reading the statutory language "in bad faith" as an issue of subjective intent makes it too easy for fees to be awarded or, in some way, makes “bad faith” an easier standard to prove than an objective standard like "frivolous.” See, e.g., Jackson v. Walker, 585 F.2d 139, 143 (5th Cir.1978) ("[I]t is difficult to prove in court the actual state of mind of a prosecutor during his exercise of discretion.”) (habeas case, involving claim of unconstitutional vindictiveness). I think District Judges are more likely to attribute questionable prosecutorial positions to good faith but' — unreasonably or reasonably— mistaken decisions.

. Enormously troubling is the fact, found by the District Court, that the Government pressed its investigation of the defense team "for the bad faith purpose of seeking to disqualify the defense lawyers for conflict-of-interest immediately prior to trial.” Shaygan, 661 F.Supp.2d at 1310. The District Court wrote that, if this objective had been realized, it would have been "catastrophic” for Defendant. Id. at 1311. In addition to the effort, trouble, and expense inherent in replacing Defendant's chosen lawyers who already knew his case, delay of the trial would have been against Defendant’s other interests: he was not free while awaiting trial, but was instead confined to his home under strict condition of house arrest. I do not expect the courts will often see conduct that would suggest this level of prosecutorial malice toward a defendant and his lawyers.

. By the way, the phrase "the separation of powers” never appears in the Department of Justice's brief, and the Department has never argued anything about that kind of issue.